IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Magdalena Ester Schwartz,<br><br>    Petitioner,<br><br>vs.<br><br>United States of America,<br><br>    Respondent. | No. CIV 10-2128-PHX-DGC (DKD)<br>No.  CR 98-0662-PHX-DGC<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE DAVID G. CAMPBELL, UNITED STATES DISTRICT JUDGE:

    Magdalena Ester Schwartz filed a Petition for Writ of Coram Nobis, seeking to withdraw her guilty plea entered in 2000, contending that she was misinformed by counsel concerning the consequences of her guilty plea on her immigration status.[1] The government contends that Schwartz has failed to establish any valid reasons for not attacking the conviction earlier, that she has failed to prove the ineffective assistance of counsel, and that her application is barred by laches. The Court agrees that Schwartz has failed to demonstrate why she was unable to file her application any sooner, and for that reason recommends that the petition be denied and dismissed with prejudice.

---

[1] In her motion, which was entitled "Motion to Vacate Guilty Plea; Petition for Writ of Coram Nobis," Schwartz also sought to withdraw her guilty plea pursuant to 28 U.S.C. §§ 2241 and 2255. The district court dismissed those claims because she is no longer in custody pursuant to the conviction and sentence in the criminal action in which she seeks to vacate her guilty plea.

**BACKGROUND**

Schwartz is a native and citizen of Chile who entered the United States on April 11, 1988 on a nonimmigrant visitor visa (Doc. 6, Exh 101, 102). She remained in the United States beyond the six-month period allowed by her visa, and on September 1, 1989 the Immigration and Naturalization Service (INS) initiated removal proceedings (*Id.*, Exh 102). Schwartz failed to appear for her hearing, and on June 2, 1992, she was ordered deported to Chile (*Id.*, Exh 103). The Board of Immigration Appeals (BIA) denied her appeal on January 18, 1996 (*Id.*, Exh 104). The INS issued a Warrant of Deportation on February 8, 1996 (*Id.*, Exh 105).

On or about March 7, 1996, Mark Schwartz, a United States citizen, petitioned the INS for a marriage-based immigrant visa for Schwartz (*Id.*, Exh 106). The INS agreed not to execute the deportation order and agreed to reopen the deportation proceedings to allow Schwartz to apply for an adjustment of status to lawful permanent residence based on her marriage to Mark Schwartz (*Id.*, Exh 107).

On December 20, 1999, Schwartz pleaded guilty to Making and Using a False Document in violation of 18 U.S.C. § 1001(*Id.*, Exh 110). Schwartz and her husband operated a business called Latin American Christian Fellowship Ministries (LACFM) that contracted with the INS to provide civics and English-language testing in connection with naturalization applications (Doc. 4, Exh 2 at 4-5). LACFM charged each applicant $130-300 for testing fees, a preparation class, and a guarantee that the applicants would pass the test (*Id*. At 5). Schwartz in fact supplied the answers to the test questions during the preparation class and instructed LACFM employees to point out the correct answers to applicants during the test (*Id.* at 6). The INS began an investigation after noticing that LACFM applicants could not speak or write English well despite having passed the test (*Id.* at 5). Some of the applicants who passed the test were unable to read and write in Spanish as well as English (*Id.*). Mark Schwartz supervised the testing sites, where LACFM applicants were falsely told that he was an INS official (*Id.* at 6). Schwartz controlled the operation and LACFM received $20,000 to $30,000 per month from testing and preparation classes (*Id.*).

1	Schwartz was indicted on October 1, 1998 on nine criminal charges; on July 14, 1999,
2	the grand jury returned a superceding indictment, charging Schwartz with one count of
3	conspiracy, four counts of making and using a false document, and three counts of pretending
4	to be an employee of the United States in violation of 18 U.S.C. §§ 371, 1001 and 912 (*Id*.,
5	Exh 3). Defense counsel advised Schwartz that if the case went to trial, "she would never
6	win and would likely be sent to jail, lose her son, and be deported." (*Id*., Exh 5 at 4). He
7	negotiated a plea agreement wherein Schwartz agreed to plead guilty to one count of making
8	and using a false document, in exchange for a dismissal of the remaining charges (Doc. 6,
9	Exh 110 at 3:22-24). The United States Attorney's Office agreed to take no position on
10	Schwartz's immigration status (*Id*., Exh 110 at 4:10-15).

11	Schwartz advised counsel that she wanted to preserve her ability to obtain lawful
12	permanent residency through her marriage to Mark Schwartz. Counsel consulted with
13	Schwartz's immigration attorney about the possible immigration consequences of the plea
14	agreement (Doc. 4, Exh 9 at 1). Following the consultation, counsel advised Schwartz that
15	entering into the plea would have no adverse consequences on her immigration status (*Id*.).
16	Schwartz pleaded guilty on December 20, 1999, and on July 11, 2000 was sentenced to three
17	years' probation, ordered to pay a $2000 fine, $795 in restitution, and a special assessment
18	of $100 (*Id*.).

19	On September 19, 2000, immigration counsel appeared on Schwartz's behalf in
20	immigration court and the immigration judge suggested that Schwartz's conviction would
21	likely constitute a crime involving moral turpitude (Doc. 6, Exh 118 at 31). On October 2,
22	2001, counsel confirmed in immigration court that Schwartz would be seeking an adjustment
23	of status, and counsel filed an application for a waiver of inadmissibility based on the
24	conviction (*Id*., Exh 109; 119; 126 at 40;15-17, 42:4-14). On October 10, 2002, Schwartz
25	was convicted of falsification of a license in violation of A.R.S. § 28-3476, and sentenced
26	to two years' probation (*Id*., Exh 111). Schwartz conceded the additional charge (Doc. 4,
27	Exh 5 at 3).

28	On July 11, 2003, the immigration judge denied Schwartz's application for adjustment

1  of status, concluding that Schwartz was less than truthful in her testimony and that she had
2  failed to show the requisite hardship to qualify for a waiver of inadmissibility (*Id*., Exh 5 at
3  5, 14-15, 19). The immigration judge also denied her application due to the seriousness of
4  her criminal conduct while in the United States unlawfully, concluding that Schwartz's
5  favorable factors were insufficient to outweigh her undesirability as a legal resident (*Id*., Exh
6  5 at 19-20). On January 18, 2005, the BIA affirmed the decision (Doc. 6, Exh 113). On
7  review in the Ninth Circuit, Schwartz challenged the classification of her conviction as a
8  crime involving moral turpitude. The court of appeals agreed that it was not categorically
9  a crime involving moral turpitude and remanded to the immigration court (*Id*., Exh 114, 115,
10 125). On October 8, 2008, the immigration judge concluded that both convictions were
11 crimes involving moral turpitude, and granted Schwartz another opportunity to apply for
12 adjustment of status (*Id*., Exh 116 at 9). The case is currently pending before the
13 immigration court. Schwartz filed her petition on July 22, 1010.

## DISCUSSION

15 Petitioners who are no longer in custody are entitled to the extraordinary writ of coram
16 nobis only after establishing that "(1) a more usual remedy is not available; (2) valid reasons
17 exist for not attacking the conviction earlier; (3) adverse consequences exist from the
18 conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the
19 error is of a fundamental character." *Matus-Leva v. United* States, 287 F.3d 758, 760 (9th Cir.
20 2002). Failure to meet any one of these requirements is fatal. *Id*. The government concedes
21 that a more ususal remedy is not available, that Schwartz is no longer in custody, and that
22 adverse consequences exist. The government contends, however, that Schwartz has failed
23 to explain why she did not seek relief under 28 U.S.C. § 2255, and why she waited ten years
24 before applying for coram nobis relief. Schwartz may not seek a writ of coram nobis to
25 avoid the time limitations under section 2255. *Id*., 287 F. 3d at 761.

26 Schwartz knew more than ten years ago that her conviction could require her to seek
27 a waiver of inadmissibility in connection with her application for adjustment of status (Doc.
28 6, Exh. 118). Her current immigration counsel confirmed in immigration court on October

- 4 -

2, 2001 that Schwartz would be seeking a waiver of admissibility based upon the conviction, and filed the application listing the specific conviction on October 17, 2002 (*Id.*, Exh 109, 126 at 40: 15-17, 42:4-14). Although Schwartz alleges that she told her defense attorney that she wanted to preserve her "lawful immigration status," she has had no legal immigration status and has been deportable since 1988 when she overstayed her nonimmigrant visitor visa. Schwartz, therefore, had no settled expectation of remaining in the United States. From the beginning of Schwartz's probationary term counsel contemplated that she would seek a waiver of admissibility to address the immigration consequences of the conviction. Schwartz was represented during this ten-year period by immigration attorneys, and admits in her petition that counsel elected to wait and initially challenge whether the offense was a crime of moral turpitude. *See* Doc. 4, Exh 7. As the government points out, there is nothing that prevented Schwartz from asserting both claims at the same time. Counsel admits that she elected not to raise the claim earlier. Such a concession by counsel is fatal to Schwartz's request that the writ be issued in this case. *See United States v. Riedl*, 496 F.3d 1003, 1006 (9th Cir. 2007).

**IT IS THEREFORE RECOMMENDED** that Magdalene Ester's Schwartz's Petition for Writ of Coram Nobis **be denied** (Doc. 1).

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **denied** because dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See*, 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report

1  and Recommendation by the district court without further review.  *See United States v.*
2  *Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure timely to file objections to any
3  factual determinations of the Magistrate Judge will be considered a waiver of a party's right
4  to appellate review of the findings of fact in an order or judgment entered pursuant to the
5  Magistrate Judge's recommendation.  *See* Rule 72, Federal Rules of Civil Procedure.
6  DATED this 16th day of May, 2011.

David K. Duncan
United States Magistrate Judge